**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jim D Smith,<br><br>　　　　　Appellant,<br><br>v.<br><br>United States Trustee,<br><br>　　　　　Appellee. | No. CV-24-00839-PHX-KML<br><br>**ORDER** |

     Appellant Jim D. Smith served as a Chapter 7 Bankruptcy Trustee as well as counsel for the estate. Over the course of approximately three years, Smith performed work and eventually asked the bankruptcy court for an award of approximately $43,000 in attorneys' fees. The bankruptcy court analyzed Smith's billing records and determined Smith was entitled to approximately $17,000. Smith appeals claiming the bankruptcy court had "no legal authority" to reduce the amount of fees. (Doc. 8 at 23.) The bankruptcy court had authority to award a reduced amount of fees and did not abuse its discretion in doing so.

**I.    Smith Acts as Trustee and Attorney**

     The underlying Chapter 7 case was filed by Maria T. Rico. Smith was appointed as trustee and as legal counsel for Rico's bankruptcy estate. (Doc. 9 at 7-8.) Smith's actions then proceeded in three time periods. The first period involved Smith liquidating the estate assets and making disbursements to the creditors. In return for those services, Smith received payment for attorneys' fees as well as a trustee commission. The case was closed in September 2015. (Doc. 11 at 63; Doc. 9 at 11.)  The second period began nine months

later when Smith moved to reopen the case. (Doc. 9 at 11.) The bankruptcy court granted Smith's request, but the bankruptcy docket does not reflect any actions by Smith. The case was closed for the second time in June 2018. (Doc. 9 at 12.)

The third period began in December 2018 when Smith filed a second motion to reopen the case. (Doc. 9 at 12.) That request was based on Rico's possible entitlement to funds from a pre-petition claim that was part of a class action settlement. The bankruptcy court granted the motion to reopen in December 2018 and, in January 2019, granted Smith's request to hire himself as legal counsel for the estate. (Doc. 9 at 13.) The attorneys' fees at issue in this appeal involve work Smith allegedly performed for the estate beginning in January 2019.

From January 2019 through November 2019, Smith billed various amounts related to his attempts to obtain the settlement funds from the class action settlement. In November 2019, Smith filed with the bankruptcy court an "Application to Approve Settlement of Class Action Claim." (Doc. 11 at 77.) That application explained the class action claim could be settled in a manner that would provide a net recovery of $23,544.32 to the estate. (Doc. 11 at 78.) From November 2019 through March 2020, Smith continued to bill amounts connected to the class action settlement. In March 2020, the bankruptcy court approved the settlement. (Doc. 9 at 14.) And from March 2020 through April 2021, Smith billed time related to recovering the class action settlement.

Beginning in May 2021, Smith began billing time regarding a home in Maricopa. Prior to Rico's bankruptcy, she and her daughter were listed on the title to that home. Rico's interest had not been addressed in previous bankruptcy proceedings. In May 2021, Rico's daughter filed an adversary proceeding to determine whether Rico had any interest in the home. Rico's daughter claimed Rico had "no beneficial interest" in the home while Smith claimed Rico's estate had a 50% interest in the home. (Doc. 11 at 89, 91.) In September 2021, Rico's daughter sought approval from the bankruptcy court to sell the home for an amount sufficient to generate approximately $267,800 in net proceeds. (Doc. 11 at 123.) At a hearing before the bankruptcy court, Smith agreed to settle the estate's interest in the

home for the amount of unpaid claims against the estate (*i.e.*, $33,000), declining over the bankruptcy court's explicit inquiries to raise the settlement offer to account for his attorneys' fees and trustee commission because he "had no idea what [his] fees were." (Doc. 11 at 222; Doc. 9 at 150.) Throughout these proceedings Smith billed a relatively large amount of time. (Doc. 9 at 166-183.)

Shortly before the hearing where Smith agreed to settle the estate's claim regarding the Maricopa home, he filed an adversary complaint regarding a security interest on that home. (Doc. 9 at 14.) Smith dismissed that complaint the same day he filed it because Smith determined it would not be "productive" to pursue it. (Doc. 11 at 26.) The United States Trustee argues the complaint was barred by the statute of limitations and Smith does not argue otherwise. Preparing, filing, and dismissing an obviously-barred adversary complaint provided no benefit to the estate, but Smith still billed time connected to those services.

In January 2022, Smith filed another adversary complaint attempting to recover the proceeds from the class action settlement that had not yet been paid. This adversary proceeding was brought against the attorneys handling the class action litigation. Shortly after filing the complaint, Smith signed and returned the necessary release forms to the administrator of the class action settlement. Smith then received the settlement monies. There is no explanation in the record how signing those release forms qualified as legal work instead of work Smith performed in his role as trustee. Nor is there any explanation in the record why it was necessary for Smith to file the adversary proceeding to recover the monies. Smith billed $5,400 in attorneys' fees for his work on this adversary proceeding. (Doc. 11 at 35.)

At the conclusion of all these proceedings Smith applied for an award of approximately $41,000 in attorneys' fees and a trustee commission of $7,545.23 (Doc. 9 at 151; Doc. 11 at 244.) When analyzing the application for attorneys' fees, the bankruptcy court noted Smith had "collected a total of $85,904.50 for the Estate in this case." (Doc. 9 at 152.) After prior disbursements connected to the class action settlement, there was a

remaining balance of $56,194.32. The amount of Smith's requested attorneys' fees and his trustee commission meant Smith was seeking "approximately 86% of the remaining funds of the Estate." (Doc. 9 at 152.)

After holding an evidentiary hearing regarding Smith's application for fees, the bankruptcy court issued a 60-page order awarding Smith less than he sought. (Doc. 9 at 146-206.) In explaining the reduction, the bankruptcy court held the amount of fees Smith incurred in connection with litigating Rico's interest in the home was "unreasonable." (Doc. 9 at 156.) That conclusion was based, in part, on Smith having opted "not to pursue a recovery sufficient to cover some or all of his administrative expenses." (Doc. 9 at 156.) In other words, the bankruptcy court believed Smith should not have settled the claim involving the home for only $33,000.

The bankruptcy court also concluded the fees incurred in connection with the adversary proceeding Smith filed and dismissed the same day were "unreasonable." (Doc. 9 at 156.) And the bankruptcy court held the fees associated with the adversary proceeding regarding the class action settlement "were not necessary and provided no benefit to the Estate." (Doc. 9 at 157.) Beyond these issues, the bankruptcy court held Smith was seeking to recover attorneys' fees for services that he performed in his capacity as trustee. Those fees were not recoverable because of the general "prohibition against attorney compensation for the performance of trustee duties." (Doc. 9 at 158.) And additional reductions were necessary because Smith requested fees at his hourly rate for tasks he performed that could have been performed by a non-lawyer, such as a paralegal.

The bankruptcy court's order included a spreadsheet analyzing each of Smith's time entries and an explanation for each reduction from the original amount Smith sought. After all the reductions, Smith was awarded $17,308.75 in attorneys' fees. (Doc. 9 at 158.) Smith filed a notice of appeal.

**II.      Jurisdiction, Standard of Review, and Bankruptcy Court Authority**

The court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). Because the sole issue is the amount of attorneys' fees awarded to Smith, a deferential standard of

review applies: "a bankruptcy court's attorney fee determination" should be affirmed "unless the bankruptcy court abused its discretion or erroneously applied the law." *In re Baroff*, 105 F.3d 439, 441 (9th Cir. 1997). This requires the court affirm the fee award unless it has "a definite and firm conviction that the bankruptcy court committed clear error in the conclusion it reached after weighing all of the relevant factors." *In re Eliapo*, 468 F.3d 592, 596 (9th Cir. 2006). Factual findings made by the bankruptcy court are reviewed for clear error.[1] *In re Su*, 290 F.3d 1140, 1142 (9th Cir. 2002).

Smith was appointed as both trustee and an attorney for the estate. While he could work in both roles, the governing statute makes clear he was entitled to attorneys' fees only for those services he performed as an attorney. Smith could not be awarded attorneys' fees "for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney . . . for the estate." 11 U.S.C. § 328(b). And even when Smith was performing the work of an attorney, the bankruptcy court could award only "reasonable compensation" which may be "compensation that is less than the amount of compensation that is requested." 11 U.S.C. §§ 330(a)(1)(A), 330(a)(2).

In seeking fees, the burden was on Smith to establish his entitlement to the amount of fees he requested.[2] *In re Roderick Timber Co.*, 185 B.R. 601, 606 (B.A.P. 9th Cir. 1995) ("The trustee has the burden of establishing that he or she is entitled to the fees requested.").

### III.   Bankruptcy Court Did Not Abuse Its Discretion

Smith's opening brief identifies three "issues" he wishes to pursue in this appeal. (Doc. 8 at 7.) First, whether the bankruptcy court was "legally correct" to award only a

---

[1] Smith repeatedly argues the court should conduct a de novo review of all aspects of the bankruptcy court's order. (Doc. 8 at 8, 11, 23.) Smith does not cite any legal authority applying that standard of review to the arguments he raises and, in fact, it is well-established the correct standards are clear error for factual findings and abuse of discretion for the amount awarded.

[2] In at least four other recent cases the bankruptcy court reduced Smith's fees requests and Smith eventually appealed to the Ninth Circuit. In those appeals Smith argued it was improper for the bankruptcy court to place the burden on him to establish his entitlement to the amount of fees he sought. The Ninth Circuit rejected that argument in all four cases. *Smith v. UST - United States Tr., Phoenix*, No. 24-174, 2024 WL 4589810 (9th Cir. Oct. 28, 2024); *Smith v. UST - United States Tr., Phoenix*, No. 24-169, 2024 WL 4589808 (9th Cir. Oct. 28, 2024); *Smith v. UST - United States Tr., Phoenix*, No. 24-170, 2024 WL 4589809 (9th Cir. Oct. 28, 2024); *Smith v. UST - United States Tr., Phoenix*, No. 24-173, 2024 WL 4589340 (9th Cir. Oct. 28, 2024).

reduced amount of fees. Second, whether the United States Trustee provided sufficient "evidence" to support the bankruptcy court's reduction of fees. And third, whether the bankruptcy court erred by reducing the fees award merely to "make additional funds available" to pay unsecured creditors. (Doc. 8 at 7.) The first two issues misread the applicable legal standard and the third misreads the bankruptcy court's order.

Smith begins his argument regarding the bankruptcy court's ability to award a reduced amount by arguing the "lodestar is the proper method to determine reasonable attorney's fees." (Doc. 8 at 11.) Apparently, Smith believes the bankruptcy court erred by failing to apply the lodestar method. It is not clear how Smith reached that conclusion. The lodestar figure is calculated "by multiplying the number of hours *reasonably* expended on a case by a reasonable hourly rate." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) (emphasis added). Thus, the lodestar calculation cannot even be performed until the court "determine[s] a reasonable number of hours for which the prevailing party should be compensated." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). The bankruptcy court properly analyzed the reasonableness of Smith's hours before applying a lodestar rate.[3]

Smith also argues the bankruptcy court erred by not awarding Smith his full hourly fee for performing administrative or clerical tasks. (Doc. 8 at 17.) Smith argues he "does not employ a paralegal" and there is no "requirement" that he hire one. (Doc. 8 at 17.) Smith is correct that he is not required to employ a paralegal, but that does not mean Smith can bill at his hourly attorney rate when he performs clerical tasks. *See Terry v. City of San Diego*, 583 F. App'x 786, 790 (9th Cir. 2014) ("The district court correctly held that attorney hours devoted to clerical work should be deducted."); *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) (noting clerical and secretarial tasks may be performed by lawyer but at "a lesser rate" than the lawyer normally bills). Smith was not entitled to his

---

[3] Smith claims the burden should have been placed on the United States Trustee to produce "evidence" supporting its position "that Smith's fees were excessive." (Doc. 8 at 15.) As previously noted, however, the burden was on Smith to produce evidence establishing his entitlement to the amount of fees he requested.

hourly rate for the tasks identified by the bankruptcy court as administrative or clerical.

Smith argues the bankruptcy court erred by not awarding all the time he spent on adversary proceedings and collecting the class action settlement. (Doc. 17 at 81.) Based on the limited arguments Smith provided, the bankruptcy court did not err in concluding the adversary proceedings failed to confer sufficient benefits on the estate to merit the amount of hours Smith billed. Nor did the bankruptcy court err in concluding there was insufficient evidence that Smith's actions in his capacity as counsel involving the class action settlement are what prompted payment of the settlement amount. The bankruptcy court was in a much better position to determine the value of Smith's services and the bankruptcy court acted well within its discretion.

Finally, Smith argues it was inappropriate to reduce his fees so that there were more funds available to distribute to unsecured creditors. (Doc. 8 at 22.) The bankruptcy court's order noted that awarding Smith the full amount he requested would leave very little for disbursement to unsecured creditors. (Doc. 9 at 150, 155.) The bankruptcy court did not, however, blindly reduce Smith's fees to ensure additional funds were available. Instead, the bankruptcy court explained the number of hours Smith billed were unreasonable considering the funds he recovered. The record supports the bankruptcy court's conclusion that Smith chose to forgo additional recovery in connection with the real property dispute. (Doc. 9 at 155.) If Smith had obtained a sizeable recovery in connection with that dispute, the number of hours he devoted to that matter may have qualified as reasonable. But Smith billed a large number of hours without obtaining a commensurately large recovery and explicitly declined to increase the recovery amount to offset his fees. The bankruptcy court did not abuse its discretion in concluding some of the hours Smith was claiming were not reasonable.

/

/

/

/

1    Accordingly,

2    **IT IS ORDERED** that the order regarding attorneys' fees is **AFFIRMED**.

3    **IT IS FURTHER ORDERED** the Clerk of Court shall enter judgment accordingly
4    and terminate this action.

5    Dated this 3rd day of December, 2024.

*[signature]*
Honorable Krissa M. Lanham
United States District Judge